### 6853. KIRBO *v.* SOUTHERN RAILWAY CO.

1. The construction of railroad yards is an engineering problem so peculiarly within the province of the railroad company that when an employee enters its service in a yard built by the company he assumes the risks arising from the mode in which the yard is constructed and its tracks are arranged, and can not thereafter maintain an action for injuries received by him in the service of the company on account of such construction or arrangement of tracks. Consequently, in this case the close proximity of one of the switch-tracks to the other was not negligence as to the plaintiff, who was an employee. Tutts *v.* Detroit &c. Ry., 122 U. S. 189 (7 Sup. Ct. 1166, 30 L. ed. 1114); *Charleston &c. Ry. Co.* v. *Brown,* 11 *Ga. App.* 493 (75 S. E. 826). This is the law of this case under the former decision of this court therein. *Kirbo* v. *Southern Railway Co.,* 16 *Ga. App.* 49 (84 S. E. 491).

2. There was no evidence that there had been any recent change in the condition of the tracks, and it appears that if they were out of alignment this condition was due to long-continued use, and was a condition

· of which the plaintiff knew by reason of his work upon them. He therefore assumed all risks due to this condition.

3. Since the evidence in behalf of the plaintiff eliminated the only questions which this court in its previous decision required to be submitted to a jury, it was not error to grant the nonsuit.

DECIDED MAY 30, 1916.

Action for damages; from city court of Atlanta—Judge Reid. June 14, 1915.

*Atkinson & Born,* for plaintiff.

*McDaniel & Black,* for defendant.

RUSSELL, C. J. 1. The ruling stated in the first headnote is considered too well settled by the authorities to require elaboration. In addition to the authorities cited in the headnote, the case of Seaboard Air Line Ry. *v.* Horton, 233 U. S. 492 (34 Sup. Ct. 639, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475), as we see it, is a holding that the doctrine of assumed risk is applicable in any case of injury to a railroad employee except in those cases specifically covered by the act of Congress, and impliedly excludes the idea that there is an abrogation of the doctrine of the assumption of the risk in case of an injury to an employee resulting solely from the construction of railroad-tracks too close to each other in a switch-yard. However, even were we in error as to this, the previous ruling of this court has fixed the law of this case. *Southern Bell Tel. Co.* v. *Glawson,* 140 *Ga.* 507, 508 (79 S. E. 136).

2. A review of the record shows that even if a jury could construe the testimony as to the condition of the tracks as proof that they were in a defective condition, and that, due to a failure to repair them, they were out of alignment, still knowledge of these defects must be imputed to the plaintiff, since there was no evidence that there had been any recent change in the tracks or their condition, and therefore it must be presumed that the tracks were in the same condition in which they had been ever since he had been at work. Consequently he must be held to have assumed all the risks which were due to these patent defects. In our previous ruling we did not lose sight of the well-settled principle that the employee assumes the ordinary risk of his employment, and that certainly he is not to be relieved from dangers which are discoverable by the most casual observation.

3. When this case was here before we were of the opinion, as

we are now, that an employee of a railroad company can not hold the master responsible for an injury which befalls him solely on account of dangers which he encounters by laboring in a switch-yard. In other words, he assumes the risk incident to such employment. A railroad-yard where trains are made up necessarily has a great number of tracks and switches close to one another, and when one enters the service of a railroad corporation in any work connected with the making up or movement of trains in a switch-yard he assumes the risk of that condition of things. Under the Federal "employer's liability act," the employee assumes the risk of employment except in those cases where there has been a violation by the carrier of the statute enacted for the safety of the employees. The construction of railroad switch-yards is an engineering problem in which a permanent situation is presented, and there is no rule of law which restricts railroad companies to any particular method of erecting their tracks. On the subject of the employee's assumption of the risks arising therefrom, see, in addition to the authorities cited in the headnote, Randall v. Baltimore & Ohio Railway, 109 U. S. 478 (3 Sup. Ct. 322, 27 L. ed. 1003); Railway Co. v. Healy, 109 Ill. App. 531, and Central of Vermont Ry. v. Bethune, 206 Fed. 868 (124 C. C. A. 528). Bearing in mind these rulings, this court, in its former decision in this case (16 Ga. App. 49, 84 S. E. 491), held that the jury should be allowed to pass upon whether or not the employee, after discovering the insufficiency of light, assumed an extra risk by undertaking to perform his duties as a switchman. We held that this would be a question of fact for determination by a jury (assuming from the allegations in the petition that lights were burning when the plaintiff began to work), and that the question whether he assumed the extra risk due to performing his dangerous duties in darkness or imperfect light would depend upon how long the darkness or insufficient illumination existed immediately prior to the injury, and upon when the discovery of the insufficiency of the light was first made by him, and also upon his location at the time the light failed, and whether, under the exigencies of the situation it was then possible for him to remove himself from the danger zone to a place of safety, or whether he was necessarily so engrossed in the efficient and proper discharge of his duties as to render him oblivious to a partial failure of the light.

On the trial now under review the evidence for the plaintiff disclosed that at the time of the injury he had been at work about forty minutes, that there were absolutely no lights in the yard, and the yard was therefore in total darkness. Under the evidence introduced by him, there was no longer any question as to the time when he discovered the insufficiency of light, or as to imperfect light, or as to how long the insufficiency of light had existed prior to his injury, or as to when he could have discovered this imperfect or insufficient light, or as to his location at the time the light failed, or as to his being engrossed in his work so as to render him oblivious to the partial failure of the light. There was simply total darkness at the time of his injury, as there had been for forty or fifty minutes previous thereto. Under this evidence the lower court properly held that he had assumed the risk of the dangers. An employee not only assumes the ordinary risks of his employment, but assumes the risks arising from a situation which is obviously dangerous.

Since the evidence for the plaintiff was in any view insufficient to sustain any of his contentions which this court had adjudged might be submitted to a jury, the trial judge did not err in awarding a nonsuit.                    *Judgment affirmed.*